IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT
OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| **THE PHOENIX INSURANCE COMPANY,** <br><br> Plaintiff, <br><br> v. <br><br> **CARDINAL COLORPRINT PRINTING COPRORATION** and **FEDEX CORPORATE SERVICES, INC.,** <br><br> Defendants. | Docket No.: 1:24-cv-03456 |

## COMPLAINT FOR DECLARATORY JUDGMENT

Now comes The Phoenix Insurance Company ("Phoenix"), by and through counsel, and for its Complaint for Declaratory Judgment, states as follows:

## NATURE OF THE ACTION

1. This is a declaratory judgment action in which Phoenix seeks a declaration that it owes no duty to defend or indemnify Cardinal Colorprint Printing Corporation ("Cardinal") in connection with an underlying action filed by FedEx Corporate Services, Inc. ("FedEx") captioned *FedEx Corporate Services, Inc. v. Cardinal Color Printing Corporation*, pending as Case No. 2023LA000219 in the Circuit Court of DuPage County, Illinois (the "Underlying Lawsuit"). A copy of FedEx's Complaint is attached hereto as **Exhibit "A".** A copy of FedEx's First Amended Complaint is attached hereto as **Exhibit "B".**

## PARTIES

1

2. Phoenix is an insurance company incorporated in Connecticut with its principal place of business in Connecticut.

3. Cardinal is an Illinois corporation with its principal place of business in Illinois.

4. FedEx is a Delaware corporation with its principal place of business in Tennessee. Phoenix is not seeking any relief against FedEx other than to bind it by the judgment. In the event that FedEx stipulates to be bound by this Court's judgment, Phoenix will voluntarily dismiss FedEx from this suit.

## JURISDICTION AND VENUE

5. An actual justiciable controversy exists between the parties pursuant to the U.S. Constitution and 28 U.S.C. § 2201 as to the insurance coverage afforded to Cardinal in connection with the Underlying Lawsuit.

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Phoenix is a citizen of Connecticut, while Cardinal is a citizen of Illinois and FedEx is a citizen of Delaware and Tennessee, and, in the Underlying Lawsuit, FedEx has alleged damages in the amount of at least $302,825.98, and therefore the amount in controversy in this action exceeds the sum or value of $75,000, exclusive of interests and costs.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the insurance policies at issue in this matter were issued in Itasca, Illinois, and therefore a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## THE PHOENIX POLICIES

8. Phoenix issued Commercial Insurance Policies to Cardinal for the policy periods running from April 1, 2020 to April 1, 2021 and April 1, 2021 to April 1, 2022 (the "Phoenix Policies"). Copies of the Phoenix Policies are attached hereto as **Exhibit "C"** and **Exhibit "D".**

9. The Phoenix Policies contain "Commercial General Liability Coverage Form," Form CG T1 00 02 19, which includes, among other things, two coverage parts: (1) Coverage A – Bodily Injury and Property Damage Liability; and (2) Coverage B – Personal and Advertising Injury Liability.

10. Subject to various terms and conditions, Coverage A – Bodily Injury and Property Damage Liability in the Phoenix Policies states that Phoenix will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" and "property damage" that occurs during the policy period and is caused by an "occurrence." *See* Exhibits "C" and "D".

11. The Phoenix Policies define the term "occurrence," in part, as "An accident, including continuous or repeated exposure to substantially the same general harmful conditions." *See* Exhibits "C" and "D".

12. Coverage A – Bodily Injury and Property Damage Liability in the Phoenix Policies is subject to several exclusions, including Exclusion a., Expected or Intended Injury, which states, in part, as follows:

> **2. Exclusions**
>
> This insurance does not apply to:
>
> **a. Expected or Intended Injury**
>
> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured…
>
> \* \* \*

3

*See* Exhibits "C" and "D".

13. Subject to various terms and conditions, Coverage B – Personal and Advertising Injury Liability in the Phoenix Policies states that Phoenix will pay sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury." *See* Exhibits "C" and "D".

14. The Phoenix Policies define the term "personal and advertising injury," as "personal injury" or "advertising injury," each of which are further defined in the Phoenix Policies as several enumerated offenses, none of which are alleged in the Underlying Lawsuit. *See* Exhibits "C" and "D".

15. Coverage B – Personal and Advertising Injury Liability in the Phoenix Policies is subject to several exclusions, including Exclusion a., Knowing Violation Of Rights Of Another, Exclusion e., Contractual Liability, and Exclusion f., Breach of Contract. *See* Exhibits "C" and "D".

16. The Phoenix Policies also contain "Printers Errors and Omissions Liability Including Correction of Work - Illinois," Form CG F4 37 04 16, which includes, among other things, two coverage parts: (1) Insuring Agreement – Printers Errors and Omissions; and (2) Insuring Agreement – Product Recall and Correction of Work. *See* Exhibits "C" and "D".

17. Insuring Agreement – Printers Errors and Omissions in "Printers Errors and Omissions Liability Including Correction of Work - Illinois," Form CG F4 37 04 16, states, among other terms, as follows:

> We will pay those sums that the insured becomes legally obligated to pay as "damages" because of "wrongful acts" in the course of providing or failing to provide "printing services or products" to which this insurance applies.

4

\* \* \*

*See* Exhibits "C" and "D".

    18.    Insuring Agreement – Product Recall and Correction of Work "Printers Errors and Omissions Liability Including Correction of Work - Illinois," Form CG F4 37 04 16, states, among other terms, as follows:

> We will pay you for "product recall and correction of work expenses" because of a wrongful act" in the course of providing or failing to provide "printing services or products", but only if all of the following provisions apply:
>
> a. The "wrongful act" is first committed in the "coverage territory" and during the policy period;
>
> b. The "printing services or products" are no longer in your care, custody or control; and
>
> c. No claim or "suit" for "damages" because of the same "wrongful acts" has been made.

\* \* \*

*See* Exhibits "C" and "D".

    19.    The "Printers Errors and Omissions Liability Including Correction of Work - Illinois," Form CG F4 37 04 16, defines "Printing services or products" as follows:

> "Printing services or products":
>
> a. Means those activities usual to the process of producing printed matter.
>
> b. Includes:
>
>     (1) Pre-press, graphic design, duplicating, printing, binding, finishing and distribution services.
>
>     (2) The creation, use or manipulation of "electronic data" that is intended to be printed.

\* \* \*

*See* Exhibits "C" and "D".

20. Coverage under the coverage parts in the "Printers Errors and Omissions Liability Including Correction of Work - Illinois," Form CG F4 37 04 16, requires a "wrongful act," which is defined in the Phoenix Policies, in relevant part, as follows:

> "Wrongful act":
>
> **a.** Means any negligent act, error or omission committed by or on behalf of the insured…
>
> \*     \*     \*

*See* Exhibits "C" and "D".

21. Printers Errors and Omissions Liability Including Correction of Work - Illinois," Form CG F4 37 04 16, in the Phoenix Policies is subject to several exclusions, including Exclusion a., Contractual Liability, Exclusion d., Failure to Perform Contract, Exclusion f., Intentional Acts, and Exclusion h., Cost Guarantees or Estimates. *See* Exhibits "C" and "D".

## THE UNDERLYING LAWSUIT

22. On March 2, 2023, FedEx sued Cardinal in the Underlying Lawsuit asserting a single cause of action for breach of contract. *See* Exhibit "A".

23. On January 19, 2024, FedEx filed its First Amended Complaint in the Underlying Lawsuit, adding two additional causes of action for breach of contract (Count I), negligence (Count II), in addition to the breach of contract (Count III) originally set forth in its Complaint filed on March 2, 2023. *See* Exhibit "B".

24. In the Underlying Lawsuit, FedEx alleges that, prior to September 8, 2020, United Airlines and/or its authorized agent, Fortigo, Inc. hired Cardinal to print and send thousands of

6

letters to employees of United Airlines to be sent via FedEx using "Economy Two Day" service, one of the delivery services offered by FedEx. *See* Exhibit "B" at ¶ 4.

25. In the Underlying Lawsuit, FedEx alleges that Cardinal delivered the bulk shipment on September 8, 2020 and that Cardinal received and accepted the benefits of FedEx's services. *See* Exhibit "B" at ¶ 12. [¶ *12* of the Amended Complaint appears to mistakenly refer to the date of delivery as September 8, 2023, when the date was actually September 8, 2020.]

26. In the Underlying Lawsuit, FedEx alleges that after FedEx received the bulk shipment from Cardinal on September 8, 2020, after FedEx had scanned and sent out all of the envelopes, it was discovered that the thermal shipping labels created by Cardinal for approximately 3,496 of the approximate 4,000 shipments had requested FedEx "First Overnight" delivery service rather than FedEx "Economy Two Day" delivery service. *See* Exhibit "B" at ¶ 13.

27. It is further alleged in the Underlying Lawsuit that the thermal shipping labels created by Cardinal improperly listed United Airlines as the sender, as opposed to listing Cardinal as the sender. *See* Exhibit "B" at ¶ 10.

28. In the Underlying Lawsuit it is alleged that United Airlines refused payment of the shipping charges for the 3,496 shipments for which Cardinal had selected "First Overnight" delivery service since United Airlines had only authorized Cardinal to send the shipments for "Economy Two Day" delivery service and United Airlines demanded that the shipping charges for the 3,496 shipments for which Cardinal had selected "First Overnight" delivery service be rebilled to Cardinal. *See* Exhibit "B" at ¶ 18.

29. In the Underlying Lawsuit, FedEx alleges that Cardinal breached its agreements with FedEx and United Airlines by preparing thermal shipping labels that requested a delivery service not authorized by United Airlines and breached its agreement with FedEx by failing to pay for the services. *See* Exhibit "B" at ¶ 19.

30. In the Underlying Lawsuit, FedEx alleges that, as a result of Cardinal's breach of contract, FedEx has been damaged in the amount of $302,825.98. *See* Exhibit "B" at ¶ 20.

31. In the Underlying Lawsuit, FedEx alleges that it requested payment from Cardinal, but Cardinal failed to pay, and FedEx is entitled to recover from Cardinal $302,825.98, attorneys' fees, collection agency fees, interest, and court costs. *See* Exhibit "B" at ¶¶ 20 and 21.

32. In addition, with respect to Count II, FedEx asserts an alternative theory of liability based on negligence in the Underlying Action relating to Cardinal's alleged breach of its duty to exercise ordinary and due care in the creation and preparation of the thermal shipping labels. *See* Exhibit "B" at ¶ 23.

33. It is alleged that Cardinal knew, or should have known, that United Airlines would refuse payment for shipping charges greatly in excess of the shipping charges that had been authorized. *See* Exhibit "B" at ¶ 25.

34. It is alleged that as a direct and proximate cause of Cardinal's negligence in creating and preparing incorrect thermal shipping labels, United Airlines has refused payment of the shipping charges for the 3,496 shipments for which Cardinal had selected "First Overnight" delivery service and FedEx has been damaged and continues to suffer damages in the amount of $302,825.98. *See* Exhibit "B" at ¶¶ 27 and 28.

35. With respect to Count III – Breach of Contract in the Underlying Lawsuit, FedEx alleges that, during the period from October 2021 through April 2022, Cardinal requested certain freight and cartage services from FedEx to be charged to Cardinal's FedEx account in exchange for which Cardinal agreed to pay for the services. *See* Exhibit "B" at ¶ 30.

36. In the Underlying Lawsuit, FedEx alleges that FedEx delivered the freight and cartage requested by Cardinal and that Cardinal received and accepted the benefits of FedEx's services. *See* Exhibit "B" at ¶¶ 31-33.

37. In the Underlying Lawsuit, FedEx alleges that Cardinal breached its agreements with FedEx by failing to pay for the services performed by FedEx. *See* Exhibit "B" at ¶ 34.

38. In the Underlying Lawsuit, FedEx alleges that its assignors transferred and assigned all of its right, title, and interest in Cardinal's account receivable to FedEx and FedEx currently owns that account receivable. *See* Exhibit "B" at ¶ 35.

39. In the Underlying Lawsuit, FedEx alleges that, as a result of Cardinal's breach of contract, FedEx has been damaged in the amount of $1,838.21 with respect to Count III. *See* Exhibit "B" at ¶ 36.

40. In the Underlying Lawsuit, FedEx alleges that it requested payment from Cardinal, but Cardinal failed to pay, and FedEx is entitled to recover from Cardinal $1,838.21, attorneys' fees, collection agency fees, interest, and court costs. *See* Exhibit "B" at ¶¶ 36-38.

## COUNT I – DECLARATORY RELIEF

41. Phoenix repeats and realleges the allegations of the preceding paragraphs as if set forth here in their entirety.

42. The facts alleged in the Underlying Lawsuit by FedEx do not allege a "wrongful act" as that term is defined in the "Printers Errors and Omissions Liability Including Correction of Work – Illinois" form in the Phoenix Policies.

43. None of the Counts in the Underlying Lawsuit by FedEx allege potentially covered "damages", as "damages" do not include "An offset or fees, charges or commissions owed, or not paid, to you by your customer."

44. The facts alleged in the Underlying Lawsuit by FedEx do not allege "bodily injury" or "property damage" caused by an "occurrence" as those terms are defined in the Phoenix Policies.

45. The facts alleged in the Underlying Lawsuit by FedEx do not allege "personal and advertising injury," "personal injury," or "advertising injury" as those terms are defined in the Phoenix Policies.

46. The facts alleged in the Underlying Lawsuit by FedEx do not allege any "printing services or products" as that term is defined in the "Printers Errors and Omissions Liability Including Correction of Work – Illinois" form in the Phoenix Policies.

47. Additionally and in the alternative, the exclusions in the Phoenix Policies and in the "Printers Errors and Omissions Liability Including Correction of Work – Illinois" form in the Phoenix Policies bar coverage for the allegations in the Underlying Lawsuit.

48. The Phoenix Policies contain an exclusion for Intentional Acts, and thus, Count I and Count III, which are for the intentional acts of breach of contract, do not qualify as a "wrongful act" as defined in the Policies.

49. The Phoenix Policies contain an exclusion for Failure to Perform Contract, and thus, Count I and Count III, which are for Cardinal's decision not to pay FedEx, do not qualify as a "wrongful act" as defined in the Policies.

50. The Phoenix Policies contain an exclusion for Cost Guarantees or Estimates, and thus, Count II, which alleges that Cardinal knew or should have known that United Airlines would refuse payment for shipping charges in excess of the authorized amount, does not qualify as a "wrongful act" as defined in the Policies.

51. Accordingly, Phoenix owes no duty to defend or indemnify Cardinal in connection with the Underlying Lawsuit because the requirements for coverage do not apply and, additionally and in the alternative, several exclusions bar coverage for the allegations of the Underlying Lawsuit.

## **PRAYER FOR RELIEF**

Wherefore, Phoenix respectfully requests that the Court enter judgment as follows:

a. Finding and declaring that Phoenix owes no coverage for Cardinal in connection with the Underlying Lawsuit, and therefore Phoenix owes no duty to defend or indemnify Cardinal in connection with the Underlying Lawsuit; and

b. Awarding such other and further relief to Phoenix as the Court deems just and proper.

Dated: April 30, 2024

Respectfully submitted,

**THE PHOENIX INSURANCE COMPANY,**

By: /s/ Petra P. Starr
One of its attorneys
Petra P. Starr, Esq.

**Usery & Associates**
161 N. Clark Street, 10th Fl
Chicago, IL 60563
Direct: 312.458.6292
Main: 917.778.6680
Fax: 844.571.3789
Email: pstarr@travelers.com

Please address all correspondence sent by mail to:

P.O. Box 2996
Hartford, CT 06104-2996